**UNITED STATES**

v.

**Private First Class William H. JUEN, 130–48–2275, U. S. Army, 116th Ordnance Company, APO New York 09093**

**and**

**Private First Class Joseph R. Panke, 487–62–0752, U. S. Army, 6th Maintenance Company, APO New York 09751.**

**CM 432203.***

U. S. Army Court of Military Review.

31 July 1975.

Appellate counsel for the Accused (JUEN): Steven J. Hyman, Esquire; CPT Anthony J. Siano, JAGC; MAJ James Kucera, JAGC.

Appellate counsel for the Accused (PANKE): CPT John M. Nolan, JAGC; CPT James E. Heath, JAGC; CPT Michael R. Caryl, JAGC; COL Victor A. De Fiori, JAGC.

Appellate counsel for the United States (JUEN): CPT Russell S. Estey, JAGC; CPT John R. Erck, JAGC; MAJ Steven M. Werner, JAGC.

Appellate counsel for the United States (PANKE): CPT Russell S. Estey, JAGC; MAJ Steven M. Werner, JAGC; LTC Donald W. Hansen, JAGC; LTC Ronald M. Holdaway, JAGC.

* Consult Table of Cases in Bound Volume by Name of Accused for appellate history.

## OPINION

DONAHUE, Judge:

The appellants were convicted of wrongful possession of marijuana in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892. The approved sentences are set forth above.

A somewhat detailed recitation of the facts is necessary to a proper understanding of the case.

A soldier named Scoville, who had an established record as a reliable informer, told the appellants' company commander, Captain Grundy, that the appellants had about 30 "kilos" of marijuana in an off-post apartment rented by appellant Juen. Scoville's information was based not on any personal knowledge, but on what he had been told by a friend whose name he declined to reveal. However, Scoville had personally seen the appellants selling marijuana as recently as two weeks earlier, although he had never been in the apartment.

On the day following his initial conversation with Grundy, Scoville reported that the appellants had removed what appeared to be marijuana from a mattress in a barracks. A search of the bed containing the mattress disclosed a hypodermic needle and syringe hidden in the bed. At about this time Grundy also confirmed from the housing office that Juen was renting the apartment described by Scoville.

Subsequent to the above-related events, Grundy telephoned his battalion commander, Lieutenant Colonel McCoy, and sought his permission to conduct a search of the apartment. Grundy informed McCoy of Scoville's background and the information he had provided relative to the apartment but mentioned neither the mattress episode nor the fact that Scoville had never been in the apartment. McCoy, who was aware that Grundy was also going to request a German search warrant, gave his authorization to search the apartment.

On the same day Koteles, a CID agent, attempted to get a German search warrant. The German authorities denied the request because they were not convinced that sufficient basis existed to issue a warrant.

On the following day a soldier named Welenc, who was a known drug user, reported to Grundy regarding a discharge under Chapter 13, AR 635–200. In response to questioning, Welenc stated that appellants had marijuana and that he had purchased from them a month earlier. In response to Grundy's statement that he believed appellants had drugs in their apartment, Welenc said: "Yes, that's probably where they are keeping it."

On the same day, McCoy reaffirmed the authorization to search during a conversation with Koteles. In this conversation Koteles related the Grundy-Welenc Conversation. Later that day a Sergeant Orr, who occupied the only other apartment in Juen's building, reported finding two duffel bags containing what he believed to be marijuana in the attic of the apartment building. McCoy was not informed. Soon thereafter, based on the new information, a search warrant was issued by a German judge. The resulting search of the apartment led to the seizure of marijuana discovered inside the rooms of the apartment, in a hallway that apparently was part of the apartment and in the attic of the building. The convictions represent the portion of the marijuana found in the apartment and hallway.[1]

USAREUR Supplement 1 to AR 190–22, dated 16 December, 1971, provides:

". . . if a search of such billets or quarters is necessary, the appropriate civilian police officials will be requested to make the search. The request will not be made unless probable cause exists as required by a. above, basic regulation. Even if host country police are to make the search, authorization must be obtained from one of the officers listed in c. above, this supplement, when the search

---

1. The appellants, by exceptions and substitutions, were acquitted of the portion of the marijuana found in the attic.

has been instigated or will be participated in by US authorities."

"Authorization" as used above clearly means "authorization to search" when read in the context of the Supplement and paragraph 2–1, AR 190–22, 12 June 1970. The cited paragraph of the basic regulation in turn provides that authorization to search can be given only if the individual has probable cause to believe that an offense punishable under the UCMJ has been committed and that the property sought will be found in the place or on the person to be searched.

The thrust of the Government's position is that:

a. McCoy's permission to search was based on sufficient probable cause.

b. Even if his permission to search was not based on sufficient probable cause, it is not relevant because he was merely giving permission for Grundy and Koteles to seek a warrant from a German court and the German warrant was based on sufficient probable cause.

We would reach the Government's second position only if we conclude that McCoy had sufficient probable cause to believe that the property was located in the place to be searched as required by AR 190–22, as supplemented. However, his only information concerning the existence of marijuana in the apartment was Grundy's report that Scoville, a reliable informer, told him that an undisclosed friend had seen the drugs in the apartment and Welenc's speculations. The Government argues that this information is sufficient under the decision in *United ed States v. Scarborough*, 23 U.S.C.M.A. 51, 48 C.M.R. 522 (1974).

We do not agree with the Government's interpretation of *Scarborough*. In that case a reliable informant accompanied an unidentified man to the outside of an apartment building. The unidentified man went inside the building and returned with the bags of heroin. Scoville participated in no similar activity with his unidentified friend

and Welenc's "information" is entitled to no weight whatsoever. The information available to McCoy failed to support his actions.

We hold that there was insufficient probable cause for McCoy to believe that the appellants had marijuana in the apartment. Consequently, McCoy had insufficient grounds to authorize U. S. instigation or participation in the search.[2]

As to each appellant, the findings of guilty and the sentence are set aside and the charges are dismissed.

Senior Judge CLAUSE and Judge COSTELLO concur.

---

2. We assume without deciding that McCoy was indeed in the class of individuals who could authorize a search.